UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES V. MUDD,

Plaintiff,

vs. Case No. 2:05-cv-137-FtM-29DNF

UNITED STATES ARMY,

Defendant.

______________________________________

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss and incorporated memorandum of law (Doc. #19) filed on December 14, 2005. Plaintiff filed his Opposition (Doc. #22-1) on January 4, 2006. Defendant seeks dismissal under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction. As to Count I, it asserts that the Privacy Act claim was filed outside the two year statute of limitations period, and thus the waiver of sovereign immunity is not applicable and the court lacks subject matter jurisdiction. As to Count II, defendant asserts that plaintiff failed to allege any basis for a waiver of sovereign immunity.

**I.**

The facts set forth in the Amended Complaint (Doc. #15-1) are as follows: James V. Mudd ("Mudd") is a retired United States Army Colonel. Mudd's last official project included oversight of a formal study of the Upper Mississippi River-Illinois Waterway navigation system ("the Study"). The Upper Mississippi River

extends from Minneapolis, Minnesota, to the junction of the Ohio River just north at Cairo, Illinois; it is 845 miles long with 29 locks and dams. The Illinois Waterway serves as the connecting link between the Great Lakes, the Saint Lawrence Seaway, and the Mississippi River, and has 8 locks and dams. The combined system of locks and dams on the Upper Mississippi and the Illinois Waterway is referred to as the Upper Mississippi River-Illinois Waterway navigation system ("the Waterway").

During the 1980's the U.S. Army Corps of Engineers (the "Corps") was given Congressional authorization to undertake a formal study of the Waterway. This study indicated that major capital improvements were needed on at least five locks in the navigation system. In 1993, another study was initiated to "describe and evaluate alternative project plans, assess environmental impacts and determine if a solution could be economically beneficial." (Doc. #15-1, ¶10.) Dr. Donald Sweeney was the lead economist who devised a new economic modeling technique for the Study.

In July 1997, Mudd assumed command of the Rock Island District, Mississippi Valley Division of the U.S. Army Corps of Engineers, which maintained lead district status for the Study. Upon review of the Study, Mudd became concerned that Dr. Sweeney and his team consistently missed deadlines and about the assumptions related to the "N" value in the economic model. Mudd had Dr. Sweeney reassigned off the Study.

In February, 2000, Dr. Sweeney filed an affidavit with the U.S. Office of Special Counsel accusing Corps officials of altering Study data in order to support additional capital improvements to the navigation system. The U.S. Office of Special Counsel found a substantial likelihood that the Corps violated regulations and wasted millions of dollars of taxpayer funds, and requested that the Department of Defense investigate the allegations contained in the affidavit.

In Spring, 2000, the Department of the Army Inspector General ("DAIG") began an investigation. On September 28, 2000, the Secretary of the Army approved the DAIG Report of Investigation and forwarded it to the Secretary of Defense. The DAIG Report indicated that Mudd took or directed actions which he knew, or reasonably should have known, would contribute to the production of a feasibility study failing to meet standards established in law and regulation. On November 13, 2000, the Secretary of Defense forwarded the DAIG Report to the Office of Special Counsel. On November 20, 2000, the Office of Special Counsel gave a copy of the DAIG Report to Dr. Sweeny. On December 6, 2000, the Office of Special Counsel held a press conference in which it released copies of the complete DAIG Report to the press and posted a complete copy on its Internet web-site.

Mudd received a Memorandum of Admonishment dated December 12, 2000, from General John M. Keane, the Vice Chief of Staff for the Army. Mudd was admonished for improperly taking or directing

actions which he knew, or reasonably should have known, would contribute to the production of a feasibility study that would fail to meet standards established in law and regulation.

On several occasions Mudd requested a copy of the DAIG Report and other material from the Army, and these requests were forwarded to the Office of Special Counsel. Mudd was told he could not be given a copy, but in a January 16, 2001 letter from the Office of Special Counsel Mudd was told that a copy could be downloaded from the Office of Special Counsel's web-site. In a letter dated January 28, 2001, Mudd informed the Army that he had downloaded the DAIG Report from the Office of Special Counsel's web-site.

On June 30, 2004, Mudd learned for the first time that the Corps of Engineers had posted a copy of the complete DAIG Report on its web-site on the internet. On July 24, 2004, Mudd learned for the first time that the Corps of Engineers had posted information related to his admonishment on its web-site on the Internet. Mudd filed several letters appealing his admonishment, and his appeal of his Memorandum of Admonishment has been denied.

Plaintiff has now filed a two-count Amended Complaint (Doc. #15). Count I alleges that publication of the complete DAIG Report on the Corps of Engineers website and the publication of information related to his admonishment on the Corps of Engineers website violated the Privacy Act. Count II alleges that the Army

failed to follow its own regulations in connection with the admonishment.

**II.**

Defendant phrases its challenge to both counts as jurisdictional challenges. Rule 12(b)(1) motions challenging the subject matter jurisdiction of the court come in two forms, a "facial" attack motion and a "factual" attack motion. Morrison v. Amway Corporation, 323 F.3d 920, 924 n.5 (11th Cir. 2003). A facial attack challenges subject matter jurisdiction based on the allegations in the complaint; the court takes the allegations in the complaint as true, and the complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Morrison, 323 F.3d at 924 n.5. In a factual attack motion, the court is not limited to the facts alleged in the Complaint, but may consider extrinsic evidence. Id. While recognizing the distinction (doc. #19, pp. 7-8), defendant's motion does not clearly state which type of challenge is being pursued. The Court construes the motion as a facial challenge, since other than expressing a certain level of incredulity defendant has present no contrary facts.

While plaintiff acquiesces in the jurisdictional framework asserted by defendant, the Court is not convinced that the statute of limitations issue asserted as to Count I is properly analyzed in jurisdictional terms. A statute of limitations is normally

considered an affirmative defense which need not be negated in the complaint, and will provide a basis for dismissal only if it is apparent from the face of the complaint that the action is time-barred. LaGrasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Privacy Act cases such as Diliberti v. United States, 817 F.2d 1259, 1262 (7th Cir. 1987) do indeed hold that the failure to file a Privacy Act complaint within the two year statute of limitations deprives a federal court of subject matter jurisdiction. In Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 95-96 (1990), however, the Supreme Court held that in cases where Congress has waived sovereign immunity equitable tolling can be presumed to apply as it ordinarily applies to private litigants. In Raziano v. United States, 999 F.2d 1539 (11th Cir. 1993) the Eleventh Circuit relied upon Irwin to find that the two year statute of limitations in the Suits in Admiralty Act was subject to equitable tolling (and thus not jurisdictional), although under the facts equitable tolling was not allowed. More recently, Chung v. U.S. Dept. Of Justice, 333 F.3d 273 (D.C. Cir. 2003) relied upon Irwin to find that the statute of limitations in a Privacy Act case was not jurisdictional, but was subject to equitable tolling.[1]

**III.**

[1]Thus, defendant's reliance upon Griffin v. United States Parole Comm'n, 192 F.3d 1081 (D.C. Cir. 1999), see Doc. #19, p. 9, is misplaced because this case was overruled by Chung, 333 F.3d at 278 n. *.

The Privacy Act, 5 U.S.C. § 552a, "gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements." Doe v. Chao, 540 U.S. 614, 618 (2004). The Privacy Act provides, in part: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains. . . ." 5 U.S.C. § 552a(b). It is not disputed that the factual allegations in Count I of the Amended Complaint are sufficient to state a claim under the Privacy Act.

The statute of limitations for filing such a Privacy Act claim is delineated in 5 U.S.C. §552(a)(g)(5), which provides:

> An action to enforce any liability created under this section may be brought . . . within 2 years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within 2 years after discovery by the individual of the misrepresentation.

5 U.S.C. §552(a)(g)(5). Thus, the statute of limitations usually "is two years from the date the private information is made public." Oja v. U.S. Army Corps of Eng'rs, 440 F.3d 1122, 1129 (9th Cir. 2006).

The following dates are set forth in the Amended Complaint: The DAIG Report was released to the press and posted on the Internet web-site of the Office of Special Counsel on December 6, 2000. (Doc. #15, ¶39.) On January 28, 2001, Mudd obtained a copy of the DAIG Report by downloading it from the website of the Office of Special Counsel. The Amended Complaint does not state when the DAIG was posted on the Army's website. Plaintiff asserts that he did not learn that the Army had posted a copy of the DAIG report on its website until June 30, 2004, and did not learn about the website posting of the admonishment information until July 24, 2004.

Defendant argues that the statute of limitations expired no later than January 28, 2003, two years after plaintiff knew of the publication of the DAIG by the Office of General Counsel on its website. (Doc. #19, p. 12.) The Court rejects defendant's assertion that plaintiff's admitted knowledge of the Office Of Special Counsel's publication triggers the limitations period as it relates to a separate agency, the Army. Even information published by the same entity at a website can constitute separate and distinct publications. Oja v. U.S. Army Corps of Eng'rs, 440 F.3d at 1133-34. Plaintiff has sufficiently plead the lack of sovereign immunity by properly pleading the elements of a Privacy Act claim. There is nothing on the face of Count I which would suggest that he cannot overcome a statute of limitations defense. The Motion to Dismiss will be denied as to Count I.

**IV.**

Defendant argues that Count II, which alleges the Army failed to follow its own regulations, should be dismissed because plaintiff failed to allege a waiver of sovereign immunity. The Court agrees. The fact that the Amended Complaint relies upon 28 U.S.C. § 1331 or constitutional claims is insufficient. Garcia v. United States, 666 F.2d 960, 966 (5th Cir. 1982). None of the regulations plaintiff relies upon suggests that the United States has consented to be sued if the regulations are violated. Plaintiff has not plead that he requested any action by the Army Board of Correction of Military Records pursuant to 10 U.S.C. § 1552, or that any decision was rendered by that Board which may be subject to judicial review. Therefore, the Motion to Dismiss will be granted as to Count II.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss (Doc. #19) is **DENIED** as to Count I and **GRANTED** as to Count II, which is dismissed without prejudice.

**DONE AND ORDERED** at Fort Myers, Florida, this 3rd day of November, 2006.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record