```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION


JAMES V. MUDD,

                 Plaintiff,

vs.                                    Case No.  2:05-cv-137-FtM-29DNF

UNITED STATES ARMY,

                 Defendant.
_____
```

## OPINION AND ORDER

This matter comes before the Court on the United States Army's Motion to Dismiss Second Amended Complaint (Doc. #37), filed on February 12, 2007. Plaintiff filed a Memorandum in Opposition (Doc. #38) on March 1, 2007. The United States Army (the Army) seeks to dismiss both counts of the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

**I.**

The relevant facts set forth in the Second Amended Complaint (Doc. #34-28) are as follows:

James V. Mudd ("Mudd") is a retired United States Army Colonel. Mudd's last official project included oversight of a formal study of the Upper Mississippi River-Illinois Waterway navigation system ("the Study"). The Upper Mississippi River extends from

Minneapolis, Minnesota, to the junction of the Ohio River just north at Cairo, Illinois; it is 845 miles long with 29 locks and dams.  The Illinois Waterway serves as the connecting link between the Great Lakes, the Saint Lawrence Seaway, and the Mississippi River, and has 8 locks and dams.  The combined system of locks and dams on the Upper Mississippi and the Illinois Waterway is referred to as the Upper Mississippi River-Illinois Waterway navigation system ("the Waterway").

During the 1980's the U.S. Army Corps of Engineers (the "Corps") was given Congressional authorization to undertake a formal study of the Waterway.  This study indicated that major capital improvements were needed on at least five locks in the navigation system.  In 1993, another study was initiated to "describe and evaluate alternative project plans, assess environmental impacts and determine if a solution could be economically beneficial."  Dr. Donald Sweeney was the lead economist who devised a new economic modeling technique for the Study.

In July 1997, Mudd assumed command of the Rock Island District, Mississippi Valley Division of the U.S. Army Corps of Engineers, which maintained lead district status for the Study. Upon review of the Study, Mudd became concerned that Dr. Sweeney and his team consistently missed deadlines and about the assumptions related to the "N" value in the economic model. Mudd had Dr. Sweeney reassigned off the Study.

In February, 2000, Dr. Sweeney filed an affidavit with the U.S. Office of Special Counsel accusing Corps officials of altering Study data in order to support additional capital improvements to the navigation system.  The U.S. Office of Special Counsel found a substantial likelihood that the Corps violated regulations and wasted millions of dollars of taxpayer funds, and requested that the Department of Defense investigate the allegations contained in the affidavit.

In the Spring of 2000, the Department of the Army Inspector General ("DAIG") began an investigation.  On September 28, 2000, the Secretary of the Army approved the DAIG Report of Investigation ("DAIG Report") and forwarded it to the Secretary of Defense.  The DAIG Report indicated that Mudd took or directed actions which he knew, or reasonably should have known, would contribute to the production of a feasibility study failing to meet standards established in law and regulation.  On November 13, 2000, the Secretary of Defense forwarded the DAIG Report to the Office of Special Counsel.  On November 20, 2000, the Office of Special Counsel gave a copy of the DAIG Report to Dr. Sweeney.  On December 6, 2000, the Office of Special Counsel held a press conference in which it released copies of the complete DAIG Report to the press and posted a complete copy on its Internet website.

Mudd received a Memorandum of Admonishment dated December 12, 2000, from General John M. Keane, the Vice Chief of Staff for the Army.  Mudd was admonished for improperly taking or directing

actions which he knew, or reasonably should have known, would contribute to the production of a feasibility study that would fail to meet standards established in law and regulation.

On several occasions, Mudd requested a copy of the DAIG Report and other material from the Army, and these requests were forwarded to the Office of Special Counsel.  Mudd was told he could not be given a copy, but in a January 16, 2001 letter from the Office of Special Counsel Mudd was told that a copy could be downloaded from the Office of Special Counsel's website.  (Doc. #34-7, Exh. 1, Tab E.)  In a letter dated January 28, 2001, Mudd informed the Army that he had downloaded the DAIG Report from the Office of Special Counsel's website.  (Doc. #34-9, Exh. 1, Tab G.)

On June 30, 2004, Mudd learned for the first time that the Corps of Engineers had posted a copy of the complete DAIG Report on its website.  On July 24, 2004, Mudd learned for the first time that the Corps of Engineers had posted information related to his admonishment on its website on the Internet.  Mudd filed several letters appealing his admonishment, and his appeal of his Memorandum of Admonishment has been denied.

## II.

Plaintiff has now filed a two-count Second Amended Complaint (Doc. #34-28).  In Count I, plaintiff alleges that publication of the complete DAIG Report website and the publication of information related to plaintiff's admonishment on the Corps of Engineers website violated the Privacy Act, 5 U.S.C. § 552a, and seeks money

damages. In Count II, plaintiff alleges that the Army failed to follow its own regulations in connection with the admonishment, in violation of the Administrative Procedures Act, 5 U.S.C. § 702, *et seq.*, and seeks non-monetary declaratory and injunctive relief.

**A.**

The Army phrases its challenge to both counts as subject matter jurisdiction challenges. Rule 12(b)(1) motions challenging the subject matter jurisdiction of the court come in two forms, a "facial" attack motion and a "factual" attack motion. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). A facial attack challenges subject matter jurisdiction based on the allegations in the complaint; the court takes the allegations in the complaint as true, and the complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Morrison, 323 F.3d at 924 n.5. In a factual attack motion, the court is not limited to the facts alleged in the Complaint, but may consider extrinsic evidence such as testimony and affidavits as long as the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action. Morrison, 323 F.3d at 924-25; Goodman v. Sipos, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001). The Army asserts that it is making a factual attack as to Count I and a facial attack as to Count II. (Doc. #37, p. 8.)

**B.**

The Army asserts that the Court lacks subject matter jurisdiction over the Privacy Act claims in Count I because the April 1, 2005, filing of this action was outside of the two year statute of limitations period.  The statute of limitations for filing a Privacy Act claim is delineated in 5 U.S.C. §552(a)(g)(5), which provides:

> An action to enforce any liability created under this section may be brought . . . within 2 years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within 2 years after discovery by the individual of the misrepresentation.

5 U.S.C. § 552(a)(g)(5).  The cause of action "arises" when the information is made public, therefore the statute of limitations usually "is two years from the date the private information is made public." Oja v. U.S. Army Corps of Eng'rs, 440 F.3d 1122, 1129 (9th Cir. 2006).

In the Court's prior Opinion and Order (Doc. #28), the statute of limitations argument was rejected as it related to the prior Amended Complaint.  The Army, however, asks the Court to consider three arguments:  First, the Army never published a copy of the DAIG Report on its website; second, plaintiff has failed to adequately allege that he suffered any harm as a result of the alleged publication on the Army Corps' website; and third,

plaintiff improperly attempts to use the Privacy Act as a vehicle to challenge the content of the agency decision. Only the first argument relates to the statute of limitations issue.

**(1)**

The Army argues that it never literally released the DAIG Report on its website, and that providing an external link to the originally released DAIG Report on the Office of Special Counsel website (which the Army admits it did do) does not constitute a release of information under the Privacy Act. The Court will assume for purposes of the motion that providing a link to an external website qualifies as a disclosure of information under the Privacy Act. The Army has cited no binding authority to the contrary. The issue then becomes whether the lawsuit was brought within the two year statute of limitations.[1]

As to the DAIG Report, the following relevant dates are set forth in the Second Amended Complaint:

- On **December 6, 2000,** the Office of Special Counsel (OSC) held a press conference at which it released copies of the complete DAIG Report and posted a complete copy of the DAIG Report on its (OSC's) Internet website (Doc. #34-28, ¶39.)

- On **January 16, 2001,** the OSC advised plaintiff by letter that the OSC had a copy of the DAIG Report, that it was a public document, and that as a public document it had been posted on the OSC website,

---

[1] As in the prior Opinion and Order (Doc. #28, pp. 5-6), the Court does not see this as a jurisdictional issue. However, all facts relied upon are either in the Second Amended Complaint or not disputed by the parties, so any difference in the standard of review is academic.

> www.osc.gov, under the documents section of the Reading Room. (Doc. #34-7.)
>
> - On **January 28, 2001,** pursuant to the letter from the OSC, Mudd obtained a copy of the DAIG Report by downloading it from the OSC website. (Doc. #34-9.)
>
> - On **June 30, 2004,** plaintiff asserts he learned for the first time that the Army, acting through the Corps of Engineers, "had posted a copy of the complete DAIG Report on its [the Army's via the Corps of Engineers] website on the Internet." (Doc. #34-28, ¶ 71.)

Although paragraph 71 of the Second Amended Complaint states that the Army posted the DAIG Report on its website[2], it does not state how or when this posting was made. As it turns out, plaintiff does not contest the factual assertions of the Army regarding these matters, as discussed below.

The Army's motion asserts that the DAIG Report was never literally published on its website. However, in or about April, 2001 the Army provided a hyperlink on its website to the OSC's website, which contained the DAIG Report. (Doc. #37-2, p. 2.) The Army states that prior to May 2002, the Corps website provided a hyperlink to the OSC website where the DAIG Report had been posted. (Doc. #37, Exh. 1.) After May 2002, the Corps website provided a hyperlink to a Corps external links notice, which then provided a second hyperlink to the OSC website where the DAIG Report had previously been posted. (Doc. #37, Exh. 1.)

---

[2]The OSC is "an independent federal investigative and prosecutorial agency" separate and distinct from the United States Army or the United States Army Corps of Engineers, and therefore publication by the OSC is not necessarily attributable to the Army.

Plaintiff agrees with the Army's representation regarding a link to the OSC's website, and does not assert in his response to the motion that the DAIG Report itself was on the Army's website. (Doc. #38, p. 6.) Plaintiff's response to the motion states that "Mudd discovered the link on the Army's website on June 30, 2004." (Doc. #38, p. 6.) While at this time the link stated "Inspector General's report findings: . . . To view the entire report click here," plaintiff has asserted that the OSC removed the DAIG Report from its website by April 23, 2003. (Doc. #34-28, Exh. 1 at p. 2.) Thus, there was a link(s) on the Army website that would allow access to the DAIG Report from April, 2001 through April 23, 2003.

As noted earlier, a Privacy Act action arises when information is made public. Here, the information was made public by the Army in April, 2001, and the Complaint was filed on April 1, 2005. The Court is satisfied that the single publication rule applies in internet situations, Oja, 440 F.3d at 1129-34, and therefore the Complaint was not filed within two years of the time in information was made public.

There is an exception to the two year time period for situations where the agency has materially and willfully misrepresented material information, in which case the action can be brought any time within two years of the discovery of the misrepresentation. 5 U.S.C. § 552(a)(g)(5). The Second Amended Complaint fails to plead any such misrepresentations, but the Eleventh Circuit has held that a plaintiff is "not required to

negate an affirmative defenses in [his] complaint." La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004)(quoting Tregenza v. Great Am. Commc'ns Co., 12 F.3d 717, 718 (7th Cir. 1993)). Thus, while surviving the statute of limitations defense may prove problematic for plaintiff, the Court cannot resolve the issue in the Army's favor on a motion to dismiss. Accordingly, the motion to dismiss Count I as to the DAIG Report based on the statute of limitations is denied.

As to the Admonishment, plaintiff received the Memorandum of Admonishment on December 12, 2000 (Doc. #34-28, ¶ 40) and learned for the first time on July 24, 2004, that the Corps had posted information related to the Admonishment on the Corps website on the internet. (Doc. #34,-28, ¶ 73.) Plaintiff attaches a "copy of the Army's July 24, 2004 posting" as Exhibit 4 to the Second Amended Complaint. The Army's website clearly states that "On December 12, 2000, the Vice Chief of Staff admonished Major General Fuhrman, Major General Anderson, and Colonel Mudd for their conduct. No further action against these individuals is contemplated." (Doc. #34-27, Exh. 4.) There is no indication when this was posted, or if it was posted prior to plaintiff's discovery. Since plaintiff filed suit within two years of this posting, this aspect of Count I is not barred by the statute of limitations.

### (2)

As to the Memorandum of Admonition, the Army also argues that the public interest outweighs Mudd's privacy interest. The Court

-10-

cannot engage in such a weighing process in response to a motion to dismiss. Therefore, the motion is denied as to this argument.

**(3)**

Defendant further argues that plaintiff failed to adequately plead a violation of the Privacy Act. The Court disagrees. This argument is determined based upon Rule 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 127 S. Ct. 2197 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)(citing FED. R. CIV. P. 8). See also Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (May 21, 2007)(citations omitted); Erickson v. Pardus, 127 S. Ct at 2200; Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1964-65 (citations omitted). "Factual allegations must be enough

to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1965. Plaintiff must plead enough facts to state a plausible basis for the claim. Id. Under this standard, Count I of the Second Amended Complaint survives the motion to dismiss. The Court notes, however, that the Privacy Act cannot be used to attack agency substantive determinations. Pellerin v. Veterans Admin. of U.S. Government, 790 F.2d 1553, 1555 (11th Cir. 1986).

### III.

The Army argues that plaintiff's Administrative Procedures Act claim is due to be dismissed for failure to allege a waiver of sovereign immunity and for failure to exhaust all intra-military remedies.

### A.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." JBP Acquisitions, L.P. v. United States ex rel. FDIC, 224 F.3d 1260, 1263 (11th Cir. 2000)(citations and quotations omitted). As previously stated in the Court's November 3, 2006, Opinion and Order (Doc. #28, p. 9), reliance on 28 U.S.C. § 1331 is insufficient to constitute such a waiver. See also Harbert v. United States, 206 Fed. Appx. 903, 907 (11th Cir. 2006)(citing Beale v. Blount, 461 F.2d 1133, 1138 (5th

Cir. 1972)³). In this case, Mudd does not seek any monetary damages, and this Circuit has read the APA to clearly waive sovereign immunity "in actions to which it applies." Estrada v. Ahrens, 296 F.2d 690, 698 (5th Cir. 1961); Warner v. Cox, 487 F.2d 1301, 1304-05 (5th Cir. 1974); Florida Dep't of Business Regulation v. United States Dep't of Interior, 768 F.2d 1248, 1253 (11th Cir. 1985), cert. denied, 475 U.S. 1011 (1986). Assuming the APA applies, the Court finds that the Army has waived sovereign immunity in this case.

**B.**

The Army also asserts that plaintiff has not exhausted his administrative remedies. The APA allows judicial review of agency actions "made reviewable by statute and final agency action for which there is no other adequate remedy in a court . . . . A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." Bowen v. Massachusetts, 487 U.S. 879, 903 (1988). See also Alabama Rural Fire Ins. Co. v. Naylor, 530 F.2d 1221, 1229 (5th Cir. 1976). "When an aggrieved party has exhausted all administrative remedies expressly

---

³In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

prescribed by statute or agency rule, the agency action is 'final for the purposes of this section' and therefore 'subject to judicial review' under the first sentence [of § 702]." Darby v. Cisneros, 509 U.S. 137, 146 (1993). Plaintiff must exhaust military administrative remedies. Linfors v. United States, 673 F.2d 332 (11th Cir. 1982).

Mudd sets forth in detail the correspondence which he alleges satisfies the exhaustion requirement. (Doc. #34-28, ¶¶43-57.) Missing from these efforts is any correspondence or proceedings with the Army Board for Correction of Military Records, 10 U.S.C. § 1552. Under 10 U.S.C. § 1552(a)(1), "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department." "The Secretary's denial of an application for correction of Army records is a final agency action subject to review under the standards of the [APA]." Lewis v. Marsh, 672 F. Supp. 14, 17 (D.D.C. 1987)(citing Miller v. Lehman, 801 F.2d 492, 496 (D.C. Cir. 1986)). "The [ABCMR]'s decision is subject to judicial review and can be set aside only if it is arbitrary, capricious, or not supported by substantial evidence." Green v. Westphal, 94 Fed. Appx. 902, 903 (3d Cir. 2004)(citing Chappell v. Wallace, 462 U.S. 296, 303 (1983)). In this case, Mudd had the

ability, and may still have the ability, to obtain relief through the ABCMR.  10 U.S.C. § 1552(b).  His failure to do so before filing suit under the APA requires dismissal of Count II for failure to exhaust administrative remedies.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

Defendant's Motion to Dismiss Second Amended Complaint (Doc. #37) is **GRANTED in part and DENIED in part**.  The motion is denied as to Count I of the Second Amended Complaint.  Count II of the Second Amended Complaint is **dismissed without prejudice** for failure to exhaust administrative remedies.

**DONE AND ORDERED** at Fort Myers, Florida, this   10th   day of July, 2007.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record